772 So.2d 540 (2000)
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellant,
v.
Foster F. BURGESS, Appellee.
No. 1D99-1764.
District Court of Appeal of Florida, First District.
July 6, 2000.
*541 Charles T. "Chip" Collette, Senior Assistant General Counsel and L. Kathryn Funchess, Assistant General Counsel, Department of Environmental Protection, Tallahassee, for Appellant.
Michael L. Rosen, of Florida Legal Foundation, Inc., Tallahassee; and Michael D. Jones, of Leffler & Associates, Winter Springs, for Appellee.
PER CURIAM.
The state Department of Environmental Protection (DEP or Department) appeals from a non-final order in an inverse condemnation action determining that the Department's denial of a dredge and fill permit constituted an unconstitutional taking of appellee's land. We reverse.
In 1956 appellee Burgess acquired approximately 160 acres of undeveloped wetlands on the Choctawhatchee River by tax deed for $500. Appellee took no action to develop the land for almost thirty years. By that time, the river had been designated an Outstanding Florida Waterway, and the Department had long since assumed jurisdiction over Florida's wetlands. In 1992, appellee applied for a dredge and fill permit to construct on the property a 1,000 square foot wooden dock, boardwalk, and A-framed camping shelter (screened on the ends) for overnight camping, fishing, and enjoyment of nature. Because his land is accessible only by water, Burgess proposed to transport in potable water and a "port-a-potty," which would be removed from the property on each occasion by boat for disposal. DEP ultimately denied the permit after administrative hearing, and appellee did not appeal that decision. Instead, Burgess filed an inverse condemnation claim in circuit court in which he alleged that the permit denial resulted in an unconstitutional taking of his property because he had been denied all "economical, viable, or reasonable use" of the property. *542 This court previously reversed an order of summary judgment in this case, State, Dep't of Envtl. Protection v. Burgess, 667 So.2d 267 (Fla. 1st DCA 1995), and remanded for trial and consideration of several issues with regard to whether the permit denial deprived appellee of all economically beneficial use of his property. Following a bench trial, the court held that the permit denial constituted a taking for which appellee should be compensated.
Appellee's takings claim is based primarily[1] in the Supreme Court's decision in Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), in which the Court announced a categorical rule applicable in rare instances to regulatory takings. In Lucas, a developer in South Carolina purchased for himself the two remaining undeveloped waterfront residential lots in his single-family residential development. In the two year delay before he commenced building on these lots, however, the South Carolina Coastal Council, pursuant to statute, disallowed all construction of permanent habitable structures seaward of the beach line it established. This action placed the two lots in a construction-free zone. Lucas did not challenge the state's lawful exercise of power; instead, he claimed the state's action caused the "complete extinguishment of his property's value" and constituted a compensable "total" taking. Id. at 1009, 112 S.Ct. 2886. Importantly, because the state trial court's determination that the regulation had rendered the land valueless was not challenged, the Supreme Court expressly did not address this issue. Id. at 1022 fn. 9, 112 S.Ct. 2886. The Court framed the issue before it as "whether the Act's dramatic effect on the economic value of Lucas's lots accomplished a taking" requiring just compensation. Id. at 1007, 112 S.Ct. 2886. The Court held that in the "relatively rare" case in which the imposition of a regulation causes an owner "to sacrifice all economically beneficial uses" or "productive options" for the land's use, then the landowner has "suffered a taking." Id. at 1018, 1019, 112 S.Ct. 2886. In such cases, neither the validity of the state's regulation nor its application is at issue; the focus is on the effect of the regulation. See MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 348, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986) ("The court cannot determine whether a regulation has gone `too far' unless it knows how far the regulation goes."). Where a regulation results in the "total deprivation of beneficial use," a taking has occurred because such is "the equivalent of a physical appropriation." Lucas, 505 U.S. at 1016, 112 S.Ct. 2886. Even when the effect of a regulation is to deprive the owner of "all economically feasible use," however, there is no taking if the owner had no right to undertake the activity under "background principles of the State's law of property and nuisance." Id. at 1029, 112 S.Ct. 2886.
The property at issue here consists of approximately 160 acres of wetlands that are inundated by brackish waters eight to twelve months of the year. The property is accessible only by water and is surrounded by other undeveloped wetlands, some of which are owned privately but most of which are owned by the government or conservation groups. Appellee testified below that he purchased the property as an "investment" that would appreciate in value and for personal recreational use. At the time of purchase, however, appellee had no specific plan for developing the property in any way. In 1992, the same year he applied for the dredge and fill permit, appellee had the boundary surveyed and divided the property into 26 smaller tracts, but he never succeeded in selling any of the undeveloped acreage. During the thirty years following the wetlands purchase, appellee used the property *543 occasionally for recreation, i.e., nature walks and fishing. He testified that after DEP denied the permit, the property was no longer of any use to him because it would be "impractical" for him to camp on the ground (a recreational activity which he had never previously undertaken on the property). He claimed, however, that despite the permit denial the property was worth many times more than what he paid for it.
As in Lucas, the propriety of DEP's permit denial is not at issue here. In contrast to Lucas, however, the issue at hand is whether DEP's denial of the dredge and fill permit had the effect of depriving appellee of all economically viable use of his property. See Corn v. City of Lauderdale Lakes, 95 F.3d 1066, 1072-73 (11th Cir.1996) ("The standard is not whether the landowner has been denied those uses to which he wants to put his land; it is whether the landowner has been denied all or substantially all economically viable use of his land."), cert. denied, 522 U.S. 981, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997). The phrase "economically viable use"
should not be read to assure an owner will be able to use property to earn a profit or to produce income. Rather, it assures an owner will be able to make some use of property that economically can be executed.
McNulty v. Town of Indialantic, 727 F.Supp. 604 (M.D.Fla.1989). See Reahard v. Lee County, 968 F.2d 1131, 1136 (11th Cir.1992) (listing factors for analysis of issue of deprivation of all economically viable use). Appellee invites this court to affirm the lower court's decision in this case by reading Lucas as a rejection of recreational use as an economically beneficial use. See Lucas, 505 U.S. at 1009 fn. 2, 112 S.Ct. 2886. Appellee's argument fails. As noted previously, the Court in Lucas did not address whether the regulation had deprived Lucas of all economically beneficial use of his land. Second, appellee testified that he bought the property for recreational use and has thus used it in the previous decades. It seems disingenuous at best for him now to claim that recreational use is not an economically beneficial use, and we reject the claim. His argument that the property is no longer of use to him is based on his claim that he needs an A-framed shelter for camping. This claim ignores that the property remains eminently suitable for the use for which he bought it and to which he has put it these many years. Importantly, he has been and remains free to build a 500 foot dock on his property to enhance his recreational use, and such construction does not even require a permit from DEP. See Fla. Admin. Code R. 62-312.050. Thus, appellee utterly failed to demonstrate that the permit denial deprived him of all reasonable economic use of his land.
To establish his claim of a compensable regulatory "total" taking of his property, appellee also was required to demonstrate that the permit denial interfered with his reasonable, distinct, investment-backed expectations, held at the time he purchased the property, to the extent that the government should compensate him. See Good v. U.S., 189 F.3d 1355, 1360-61 (Fed.Cir.1999), cert. denied, 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000); Loveladies Harbor, Inc. v. U.S., 28 F.3d 1171, 1182 (Fed.Cir.1994). It is undisputed that at the time appellee purchased the property, no state regulation of wetlands limited appellee's use of the property. This does not end the inquiry, however. Appellee bought the land as an undefined "investment," with no specific (or even general) expectation of developing or improving the property. See Pace Resources, Inc. v. Shrewsbury Township., 808 F.2d 1023, 1032-33 (3d Cir.1987)(acknowledging that reasonable, distinct, investment-backed expectations may involve recognition that property can have value arising from partially executed plans for development but noting limiting principles that such expectations are reasonable only in light of state power to regulate in public *544 interest and that regulatory taking occurs only where regulation has effect of near complete destruction of owner's property rights), cert. denied, 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987); Furey v. City of Sacramento, 592 F.Supp. 463, 469 (E.D.Cal.1984) ("[T]he investment in land expressed as its purchase price cannot give rise to investment-backed expectations protected by the law."), aff'd, 780 F.2d 1448 (9th Cir.1986). Appellee's own testimony demonstrates only that at the time of purchase he believed that over time the property would appreciate in value so that he could sell it to hunters and fishermen. A landowner, however, does not have a right to gain a profit from an investment in land, see Andrus v. Allard, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979), and the frustration of speculative economic gain is not protected by the Takings Clause, see U.S. v. Grand River Dam Auth., 363 U.S. 229, 80 S.Ct. 1134, 4 L.Ed.2d 1186 (1960). Appellee's second expressed basis for purchasing the property was for personal recreation. As explained above, appellee's expectation to use and his use of the land for personal recreational purposes over the decades has not been totally or even substantially thwarted by the singular permit denial. His desire to develop the property by building a dock with a platform containing an open air A-framed camping shelter did not materialize until 1992, and as noted above, he does not need a permit to construct a dock on his land. There is no record evidence that other landowners had built such camping shelters on adjacent land. In fact, the testimony at trial demonstrated that the extensive, remote wetlands adjacent appellee's property have remained undeveloped as has his property. See Smith v. City of Clearwater, 383 So.2d 681, 685 (Fla. 2d DCA 1980) (rejecting claim that taking resulted from restrictive "aquatic lands" rezoning of Smith's wetlands property and stating while "appellants will not be able to do much with their wetlands in the face of aquatic zoning, there wasn't very much they could have done with this land without such zoning"), review dismissed, 403 So.2d 407 (Fla.1981). Appellee failed to demonstrate that he had reasonable, distinct, investment-backed expectations with which the single permit denial interfered at all.
For the foregoing reasons, we reverse the trial court's order finding that DEP's denial of a dredge and fill permit resulted in a total taking of appellee's wetlands requiring compensation. As a result, there is no need to address the other issues raised in this appeal.
MINER, BENTON and BROWNING, JJ., CONCUR.
NOTES
[1] Appellee also relies on Vatalaro v. Department of Environmental Regulation, 601 So.2d 1223 (Fla. 5th DCA), review denied, 613 So.2d 3 (1992). We reject the applicability of the case, and because we find its reasoning flawed, we decline to follow it.